UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LYNKER CORPORATION,
         *Plaintiff*,

    v.

SPECIALTY AVIATION HOLDING
CORPORATION, *et al.*,
         *Defendants.*

No. 1:24-cv-02380-MSN-WEF

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Lynker Corporation's Motion for Judgment on the Pleadings against Defendants Specialty Aviation Holding Corporation ("SAHC"), Advanced Radar Company, LLC ("ARC"), and Radiometrics LLC (ECF 70), and Plaintiff's Motion for Summary Judgment against Defendant Neil Brackin (ECF 74).[1] For the reasons below, the Court will grant Plaintiffs' Motions and issue summary judgment in Plaintiff's favor.

## I.    BACKGROUND[2]

Defendants ARC and Radiometrics LLC are Colorado limited liability companies and wholly owned subsidiaries of Defendant SAHC (collectively, the "Company Defendants"). ECF 77-4 at 2. Defendant Brackin, at all times relevant, was the Company Defendants' President. *See* ECF 75, Plaintiff's Statement of Undisputed Material Facts ("PSUMF") ¶ 6; ECF 76-18 at 70.

---

[1] Brackin also filed a Motion to Appear Remotely at a status conference before the Magistrate Judge. ECF 66. The status conference appears to have been canceled and, in any event, has long passed and so the Court will deny Brackin's Motion as moot.

[2] The following facts are undisputed unless otherwise noted.

On March 27, 2024, Plaintiff executed a Business Loan Agreement with SAHC in which Plaintiff agreed to loan SAHC $120,000. PSUMF ¶¶ 1-2; ECF 77-1. The Business Loan Agreement set a repayment date for the loan of June 25, 2024. ECF 77-1 at 2.

On April 12, 2024, Plaintiff, Brackin, and the Company Defendants entered into an Exclusivity Agreement, in which Brackin and the Company Defendants agreed not to solicit or engage in any "merger, consolidation, recapitalization, spin-off or sale of the securities or material assets" involving the Company Defendants. ECF 77-4 § 1. In connection with the Exclusivity Agreement, Plaintiff agreed to loan the Company Defendants an additional $500,000. ECF 77-2 § 1.

The Company Defendants jointly and severally executed a Promissory Note with Plaintiff memorializing the aggregate loan amount of $620,000. *Id.* at 2. The Promissory Note defines the "Maker" as the Company Defendants and defines Plaintiff as the "Holder." ECF 77-2 at 2. It defines the Loan Amounts as the "Initial Advance" of $120,000 to SAHC pursuant to the Business Loan Agreement and the "Additional Advance" of $500,000 to Maker. *Id.* § 1. It also selects Virginia law as the governing law. *Id.* § 20.

Section 2 of the Promissory Note sets an interest rate on the loan at 10% per annum, accruing daily on the principal balance. *Id.* § 2(i). The Promissory Note also states that the loan will mature after ninety days but gives the parties the option to extend the maturity date for an additional 30 days "[i]n the event the Exclusivity Agreement" is also extended. *Id.* § 3.

The Promissory Note defines an Event of Default to include when any principal or interest becomes due. ECF 77-2 § 10(i). In the event of a default, the Note states that "the principal of and accrued interest on this Note then outstanding shall become immediately due and payable," and interest will begin to accrue at an additional 2% per annum. *Id.* §§ 2(ii), 10.

2

In addition to laying out the financial terms of the agreement, the Promissory Note contains an indemnification provision under which Maker agreed, even in the event of default, to "indemnify and hold harmless Holder" from costs and losses, including "attorneys' fees and expenses in connection with any claim." *Id.* § 11. The Note specifies that it "may be amended only by a written instrument signed by Maker and Holder." *Id.* § 19. Finally, the Promissory Note includes an integration clause which states that "[a]ll understandings, representations and agreements heretofore had with respect to this Note (including under the Business Loan Agreement) are merged into this Note which alone fully and completely expresses the agreement of Maker and Holder." *Id.* § 24. Brackin signed the Promissory Note on behalf of the Company Defendants. ECF 77-2 at 10.

Brackin also signed a Guaranty of the Promissory Note under which he "absolutely and unconditionally guarantee[d]" the "prompt and unconditional payment" of the loan, accrued interest, and "all other sums due to Holder in respect of the Loan" in the Promissory Note. ECF 77-6 §§ 1-3. The Guaranty states that "[i]t is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note." *Id.* § 2. The Guaranty also contains a waiver of defenses. It provides that, by signing, Brackin waives, among other things, "any defense based upon any legal disability or other defense of Maker, any other guarantor or other person, or by reason of the cessation or limitation of the liability of Maker from any cause other than full payment of all sums payable under the Note." *Id.* § 5.

In signing the Guaranty, Brackin acknowledged that

(a) as part of Holder's consideration for entering into this transaction, Holder has specifically bargained for the waiver and relinquishment by Guarantor of all such

> defenses and (b) Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type reflected in this Guaranty and the Note.

*Id.* § 6.

The final document executed by the parties on April 12, 2024, was a "non-binding" Term Sheet in which Plaintiff, the Company Defendants, and Brackin set out Plaintiff's intention to perform a "due diligence review" of the opportunity to purchase the Company Defendants. ECF 77-7.

On June 27, 2024, the Plaintiff and the Company Defendants executed an Addendum to the Promissory Note in which they extended the due date for the Note by thirty days, making it due on August 10, 2024. *See* ECF 77-3. Brackin again signed the Addendum on behalf of the Company Defendants. *Id.* at 3. The Plaintiff, the Company Defendants, and Brackin also signed an addendum to the Exclusivity Agreement that terminated the Agreement effective June 30, 2024. ECF 77-5.

On August 10, 2024, the loan amount became due. But neither the Company Defendants nor Brackin repaid any amount of the $620,000 principal loan or interest. PSUMF ¶ 22. Indeed, the only payment that any Defendant has made to Plaintiff in connection with the loan is a one-time payment of $25,000 made by the Company Defendants around June 27, 2025. PSUMF ¶ 23.

On December 31, 2024, Plaintiff sued Defendants alleging that they had breached the Promissory Note and Guaranty by failing to repay the loan and interest. ECF 1. In Brackin's Answer,[3] he asserted a series of affirmative defenses, including that repayment of the loan was impracticable[4] because "[a] severe rain, wind, lightning and thunderstorm . . . hit Defendants'

---

[3] The Answer was filed on behalf of all Defendants, *see* ECF 20, however the Company Defendants later filed an Amended Answer that dropped all affirmative defenses, *see* ECF 49.

[4] The Answer frames the defense as "Force Majeure/Commercial Impracticality." ECF 20 at 15. The Court construes Brackin's "Impracticality" defense as a defense of commercial impracticability. *See Elderberry of Weber City, LLC*

Colorado production facility and business in June of 2024," destroying their equipment and preventing them from being able to do business for approximately three months. ECF 20 at 15.

In support of his impracticability defense, Brackin attached a series of pictures to his Answer showing water on the floor of the Company Defendants' Colorado facility and around its machinery. ECF 20-1. During discovery, however, Eric Plomondon—the Company Defendants' director of manufacturing and manager of facilities—testified that, while the facility did experience a storm on May 30 and 31, 2024, that led water to puddle on top of transformers, the storm did not cause major disruptions to operations, did not cause any damage to equipment, did not cause the companies to incur any costs, and took less than an hour to clean up. ECF 76-18, Plomondon Dep. at 73:10-20; 78:5-80:21; 178:13-17. Plomondon further testified that Brackin staged the photographs attached to his Answer to be able to submit them as part of a fraudulent insurance claim. ECF 76-18 Plomondon Dep. at 90:4-91:21. Finally, Plomondon testified about an analysis he had completed in October 2024, in which he stated that water damage from May 30, 2024, caused various machinery to fail, resulting in $65,000 in damages. *See* ECF 76-18 at 93. Plomondon testified that this was a "false statement" that Brackin "coerced" him into writing. *Id.*, Plomondon Dep. at 185:13-186:13; *see also* 187:7-9 (characterizing the expenses as "a fabrication"). In actuality, "[t]he [machinery] was not damaged by the storm." *Id.* at 191:12-15.

Brackin, for his part, disputes Plomondon's statements. ECF 81-1 ¶¶ 11-12. In a signed declaration, he claims that "[d]uring 2024, the facility where the Companies operated experienced weather-related events, including heavy rain and storm conditions[] that caused water intrusion, leaks, and related issues in the hangar and adjoining space." *Id.* ¶ 8. "These events affected [the

---

*v. Living Centers-S.E., Inc.*, 958 F. Supp. 2d 623, 635 (W.D. Va. 2013) (recognizing impracticability as a defense to a breach of contract action).

Company Defendants'] ability to operate normally and impacted [their] already-strained finances." *Id.* ¶ 9. Brackin also stated that he only agreed to the Promissory Note and Guaranty because he believed they would be "part of a broader partnership" between Plaintiff and the Company Defendants. *Id.* ¶ 7.

In 2025, a Colorado state court appointed Plomondon as a receiver for the Company Defendants. ECF 81-1 ¶ 13; ECF 85-1. Brackin has challenged "the validity and scope" of that appointment. ECF 81-1 ¶ 16.

Meanwhile, after completing discovery in this case, Plaintiff moved for judgment on the pleadings against the Company Defendants. ECF 70. Plaintiff, however, noted that the Court could, in "its discretion," treat the Motion as one for summary judgment. ECF 71 at 8 n.2. Plaintiff also moved for summary judgment against Brackin. ECF 74.

## II.    LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986) (internal quotation marks omitted). The question at summary judgment is whether there is a "*genuine* issue of *material* fact." *Id.* at 248 (emphasis in original). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted).

In assessing a motion for summary judgment, the Court should draw all reasonable inferences in the light most favorable to the nonmoving party. *Benton v. Layton*, 139 F.4th 281, 288 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 1497 (2026). That means that the Court may not weigh evidence or resolve factual disputes in the movant's favor, even if "a jury could well believe the

6

evidence forecast by the movant." *Id.* (cleaned up). If, however, the moving party meets its burden to show that there is no genuine issue of material fact, the non-moving party must establish material facts in dispute that justify the need for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). At this stage, "wholly speculative assertions will not suffice." *CMA CGM S.A. v. Leader Int'l Express Corp.*, 474 F. Supp. 3d 807, 814 (E.D. Va. 2020) (internal quotation marks omitted).

## III.    ANALYSIS

### A.    Judgment Against the Company Defendants

Plaintiff argues that it is entitled to judgment on the pleadings on its breach of contract claim against the Company Defendants because the Company Defendants have admitted all of the material allegations against them and have asserted no affirmative defenses. *See* ECF 71 at 5, 7-8; *see also* ECF 49. Plaintiff, however, "acknowledges" that both the Complaint and the Company Defendants' Amended Answer omit the fact that the parties extended the maturity date on the loan for thirty days through the Promissory Note Addendum. ECF 71 at 8 n.2. To correct the factual record, Plaintiff attached the Promissory Note Addendum to its Motion. *See id.*; ECF 71-2.

Because the maturity date extension was not included in parties' pleadings, the Court can only consider that fact by converting Plaintiff's Motion for Judgment on the Pleadings into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Before converting a motion for judgment on the pleadings into one for summary judgment, the Court must be satisfied that two requirements have been met. *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc). "The first is that 'all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment.'" *Id.* (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). A party has proper notice if it is

"aware that material outside the pleadings is before the court." *Id.* (quoting *Gay*, 761 F.2d at 177). The second requirement is that the parties receive a reasonable opportunity for discovery. *Id.*

Plaintiff's Motion easily surpasses the threshold for conversion to summary judgment. Plaintiff acknowledged in its Motion that it was relying on materials outside of the pleadings and only moved for judgment on the pleadings after discovery. *See* ECF 71 at 8 n.2. Moreover, the Company Defendants have treated Plaintiff's Motion as one for summary judgment. *See* ECF 79 (responding to Plaintiff's "Motion for Summary Judgment"). The Court will therefore do the same.

To receive summary judgment on its breach of contract claim, Plaintiff must show (1) the Company Defendants owed Plaintiff a legally enforceable obligation, (2) Company Defendants breached that obligation, and (3) the breach caused Plaintiff injury or damage. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Here, the Company Defendants do not dispute that the Promissory Note gives rise to an enforceable obligation to repay Plaintiff $620,000 plus interest at a rate of 10% for 120 days; interest at a rate of 12% from August 10, 2024, to the present; and attorneys' fees and expenses incurred in connection with the Promissory Note and Guaranty. *See* ECF 79; *see also* ECF 71 at 7-9. The Company Defendants also do not dispute that they failed to pay any amount on the loan beyond $25,000. *See* ECF 79; *see also* ECF 71 at 7-9. In fact, the Company Defendants do not oppose entry of judgment against them.[5] ECF 79 at 3. The Court therefore concludes that plaintiff is entitled to summary judgment on its breach of contract claim against the Company Defendants and may recover the loan amount, interest, and reasonable attorneys' fees.

---

[5] The Company Defendants initially expressed concern that, if judgment was entered against them, that judgment could conflict with a stay entered in the Colorado receivership action. ECF 79 at 1-2. The Company Defendants have since clarified that the parties reached a resolution approved by a Colorado state court and there no need to stay this action or for the Court to abstain from ruling. ECF 85 at 4-5.

## B.       Judgment Against Brackin

Plaintiff also seeks summary judgment on its claim that Brackin breached the Promissory Note and Guaranty by failing to repay the loan amount and interest. *See* ECF 75. In response, Brackin does not contest that he failed to pay or that this failure has caused Plaintiff damage. *See* ECF 81-2. Instead, he raises three affirmative defenses to contest the first element of Plaintiff's breach of contract claim—whether he owes Plaintiff a legally enforceable obligation in the first place. Brackin argues that (1) the Promissory Note and Guaranty do not represent the complete agreement between the parties, (2) the Guaranty is unconscionable, and (3) weather events in 2024 constituted a force majeure event and made repaying the loan impracticable. ECF 81-2 at 5-7. Brackin also argues, in the alternative, that this Court should stay ruling on summary judgment until the Colorado state court resolves Brackin's challenges to Plomondon's appointment as the Company Defendants' receiver.[6] Each of Brackin's arguments fail to persuade.

### 1.   Scope of the Agreement

Brackin argues, first, that Plaintiff is not entitled to summary judgment on its breach of contract claim because the Promissory Note and Guaranty do not represent the "complete agreement" between the parties. ECF 81-2 at 2-3. He contends that the loan was intended to be "short-term, bridge-style financing" as part of a business deal between the parties and that Plaintiff assured him that it would not "rush to enforce" the Guaranty "if the broader transaction moved forward." *Id.* at 3. Plaintiff, however, cannot escape the language of the contracts that he signed.

---

[6] In addition, Brackin argues that Plaintiff should not be awarded attorneys' fees because it has not provided a record of its fees in this matter. Plaintiff will be required to submit a fee petition within twenty-one days that demonstrates the reasonableness of its fees. *See Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F. Supp. 2d 533, 536 (E.D. Va. 2012) (explaining that, where a contract "does not fix the precise amount" of attorneys' fees due, the court must "determine from the evidence what are reasonable fees under the facts and circumstances of the particular case" (quoting *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991)).

As the Virginia Supreme Court has remarked, "when the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning." *Golding v. Floyd*, 539 S.E.2d 735, 736 (Va. 2001). "[I]f the intent of the parties can be determined from the language they employ," then "parol evidence respecting their intent is inadmissible." *Id.* at 737; *see also, e.g.*, *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572, 579 (E.D. Va. 2013) (explaining that "where the contractual language is clear, a court may not invite or accept the submission of extrinsic evidence, 'find' ambiguity in the contractual text based upon that evidence, and resolve the found ambiguity by resort to that extrinsic evidence" (cleaned up)), *aff'd* 549 Fed. Appx. 211 (4th Cir. 2014).

The language of the Promissory Note, Promissory Note Addendum, and Guaranty are crystal clear. Under the Promissory Note and its Addendum, the Company Defendants "unconditionally promise[d] to pay" Plaintiff "the aggregate principal amount" of $620,000, "together with interest thereon" within 120 days. ECF 77-2 at 2; ECF 77-3. In the Guaranty, Brackin "absolutely and unconditionally guarantee[d] to [Plaintiff] the prompt and unconditional payment" of the Company Defendants' obligations under the Promissory Note. ECF 77-6. There is no ambiguity that the Company Defendants agreed to repay the loan plus interest and that Brackin unconditionally guaranteed that payment, regardless of any business deal the parties may have discussed.

Nor does Virginia's doctrine of partial integration allow the Court to look beyond the contracts at issue. The doctrine "allows parties to a contract to supplement the terms of the writing with extrinsic evidence only if: (1) the parties did not reduce their entire agreement to writing; (2) the extrinsic evidence does not contradict or vary the written terms; and (3) the extrinsic evidence involves items on which the parties agreed contemporaneously with the writing." *Swengler v. ITT*

10

*Corp. Electro-Optical Products Div.*, 993 F.2d 1063, 1069 (4th Cir. 1993). But here, both the Promissory Note and the Guaranty contain merger clauses making clear that the documents "completely express[]" the parties' agreements. *See* ECF 77-2 § 24; ECF 77-6 § 11; *see also Kiser v. CMH Homes, Inc.*, No. 5:11CV00005, 2011 WL 1750595, at *2 n.4 (W.D. Va. May 9, 2011) ("A merger clause is generally seen as evidence that the contract is a complete integration of the agreement between the parties."). And, even if Brackin could offer evidence that the Guaranty was contingent on a business deal or some other agreement, that evidence would contradict the Guaranty's written terms under which Brackin "absolutely and unconditionally" agreed to ensure repayment. ECF 77-6 § 1. The Court therefore will not look beyond Brackin's express agreements in the documents he signed.

### 2. Unconscionability

Next, Brackin argues that the Promissory Note and Guaranty are unconscionable because Plaintiff pressured him into signing them at a moment when the Company Defendants "were under significant financial strain." ECF 81-2 at 6-7.

A contract is only unconscionable if it is "one that no man in his senses and not under a delusion would make, on the one hand, and [that] no fair man would accept, on the other." *Mgmt. Enters., Inc. v. Thorncroft Co., Inc.*, 416 S.E.2d 229, 231 (Va. 1992) (quoting *Smyth Brothers v. Beresford*, 104 S.E. 371, 382 (Va. 1920)). "The substantive terms of the contract must be so grossly inequitable that it shocks the conscience." *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 870-71 (E.D. Va. 2011) (internal quotation marks omitted). Moreover, the party asserting the defense must prove that a contract is unconscionable "by clear and convincing evidence." *Id.* at 871.

11

No reasonable juror could find that Brackin has met his burden to show that the Promissory Note and Guaranty are unconscionable. He has offered no factual support—even in his declaration—for his claim that he was pressured into signing the documents. *See* ECF 81-1. As this Court has observed, "[t]he doctrine of unconscionability simply does not apply where, as here, sophisticated businessmen enter into a contract after negotiating at arms-length." *Fransmart*, 768 F. Supp. 2d at 871.

### 3. Force Majeure and Impracticability

Brackin's last defense is that it was impracticable for him to repay the loan because "weather-related events" in 2024, such as rain, "caused real operational impacts" to the Company Defendants that "required mitigation." ECF 81-2; ECF 81-1 ¶¶ 8-9. In response, Plaintiff argues that the contracts at issue do not contain a force majeure provision that could excuse performance, and Plaintiff's claims of impracticability are too conclusory to make out a defense. ECF 83 at 10-11. Plaintiff is correct, but only in part.

Virginia courts have not foreclosed a force majeure defense to a breach of contract claim, even when a contract does not contain a force majeure clause, if a force majeure event renders a contract impossible to perform. *See Sanders v. Coleman*, 34 S.E. 621, 622 (Va. 1899) (holding that, "if the performance of a contract is rendered impossible by the act of God alone, such fact will furnish a valid excuse for its nonperformance, and such a stipulation will be understood to be an inherent part of every contract"); *Dominion Energy Cove Point LNG, L.P. v. Mattawoman Energy, LLC*, No. 1:20-CV-611, 2020 WL 9260246, at *8 (E.D. Va. Oct. 20, 2020) (explaining that a party may raise an "Act of God" defense when an event would make performance impossible). In the absence of a force majeure provision, the defense thus merges with an impossibility or impracticability defense.

"To prove the defense of impossibility of performance, a defendant must prove: (1) the unexpected occurrence of an intervening act; (2) such occurrence was of such a character that its non-occurrence was a basic assumption of the agreement of the parties; and (3) the occurrence made performance impracticable." *CMA CGM S.A.*, 474 F. Supp. 3d at 817. To demonstrate that performance was impracticable, "the unexpected event need not make performance literally impossible; rather, performance is impracticable 'when it can only be done at an excessive and unreasonable cost.'" *Elderberry of Weber City, LLC v. Living Centers-S.E., Inc.*, 958 F. Supp. 2d 623, 635 (W.D. Va. 2013) (quoting *Transatlantic Fin. Corp. v. United States*, 363 F.2d 312, 315 (D.C. Cir. 1966)). "[A] 'mere change in the degree of difficulty or expense,'" however, "does not amount to impracticability, and a party is expected to use reasonable efforts to surmount obstacles to performance." *Id.* (quoting Restatement (Second) of Contracts § 261 cmt. d. (1981)).

The Court accepts as true Brackin's claim in his declaration that "heavy rain and storm conditions" in 2024 "caused water intrusion, leaks, and related issues" in the Company Defendants' facilities.[7] ECF 81-1 ¶ 8; *see also Alexander v. Connor*, 105 F.4th 174, 178 (4th Cir. 2024) (stating that courts must accept "self-serving affidavits offered by the non-movant" so long as they are "based on personal knowledge or firsthand experience" (internal quotation marks omitted)). Nevertheless, Brackin has not come forward with any specific facts to show that, as a result of the water damage, repayment of the loan and interest could only be done "at an excessive and unreasonable cost," *Elderberry*, 958 F. Supp. 2d at 635. On the contrary, Brackin's statements in his declaration about the costs that the Company Defendants incurred could not be vaguer: he

---

[7] While the Court accepts the statements in Brackin's declaration as true for purposes of this Motion, the Court notes that Plaintiff has submitted overwhelming evidence showing that Brackin falsified evidence of flooding at the Company Defendants' facility in order to submit a fraudulent insurance claim. *See, e.g.*, ECF 76-6 (Memorandum from Erick Plomondon); ECF 76-18, Plomondon Dep. at 78:5-80:21; 90:4-91:21; 186:5-189:15. The Court reminds Brackin that, despite his *pro se* status, he is bound by the Federal Rules of Civil Procedure—including Rule 11—and may be subject to sanctions if he presents information to the Court that is untruthful or lacks evidentiary support. Fed. R. Civ. P. 11(b).

asserts that "weather-related events" impacted their "ability to operate normally" and "diverted" "time and resources." ECF 81-1 ¶¶ 8-9. Under even the most generous interpretation, Brackin's description does not show that weather and flooding presented an insurmountable challenge to repaying the loan.

In sum, there is no genuine dispute that Brackin owed Plaintiff an enforceable obligation to repay the loan, interest, and litigation costs, entitling Plaintiff to summary judgment.

### 4.  Stay in Litigation

In an attempt to avoid this outcome, Brackin argues that the Court should delay ruling on summary judgment until the Colorado court rules on his challenge to Plomondon's appointment as the Company Defendants' receiver. ECF 81-2 at 7-8. Brackin claims that, if his challenge to the receivership is successful, it will undermine Plomondon's testimony that the Company Defendants did not experience flood damage in May 2024.

The Court has already rejected Brackin's request once before, *see* ECF 73, and will do so again. Even setting aside Plomondon's testimony and fully crediting Brackin's, he simply has not met his burden to show a genuine dispute of material fact as to whether he could practically pay back the loan. Whatever happens in the Colorado receivership action will not change this result.

## IV.  CONCLUSION

For the foregoing reasons, the Court will convert Plaintiff's Motion for Judgment against the Pleadings against Defendants SAHC, ARC, and Radiometrics LLC (ECF 70) into a motion for summary judgment and grant summary judgment in Plaintiff's favor. The Court will also grant Plaintiff's Motion for Summary Judgment against Defendant Neil Brackin (ECF 74). A separate Order will follow.

14

**SO ORDERED.**

_____
/s/
Michael S. Nachmanoff
United States District Judge

July 20, 2026
Alexandria, Virginia